**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| | * |
| v. | Case No.: GJH-21-396 |
| | * |
| **EUNICE BISONG NKONGHO,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

On October 15, 2021, Eunice Bisong Nkongho was found guilty of conspiracy to commit money laundering (Count I) and money laundering (Count II) in a jury trial. *See* ECF No. 33. Pending before this Court is Nkongho's Motion for Judgment of Acquittal for improper venue as to Count II. *See* Fed. R. Crim. P. 29. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, the Motion is denied.

**I.     BACKGROUND**

Nkongho was charged and convicted as a member of an extensive money laundering conspiracy involving the sale of stolen electronics. As relevant to Count II, in September of 2016, Nkongho received cash from the proceeds of stolen electronics from another member of the conspiracy. *See* ECF No. 1 at 6.[1] In October of 2016, Nkongho deposited $3,000 in cash into a Bank of America account. *Id.* She made the deposit at a branch of Bank of America in Lynwood, California. *Id.* The deposit was made into a bank account belonging to Troy Barbour,

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

1

an individual who was in Maryland at the time. *Id.* Barbour later wired money to an account located in Nigeria. *Id.*

Nkongho was charged with money laundering and money laundering conspiracy in the District of Maryland. *See* 18 U.S.C. §§ 1956(a), 1956(h). During the trial by jury, the Government called Andrew Levy, a custodian of records at Bank of America, to testify about out-of-state counter deposits. *See* ECF No. 16 at 1.[2] During cross-examination, Levy agreed with Nkongho that the deposit was "cash put into Bank of America outside the state of Maryland[,]" that it was a "financial and money transaction that was conducted in California[,]" and that the "transaction was completed once the $3,000 was deposited to Bank of America in California[.]" ECF No. 19 at 6, 8.

At the conclusion of the Government's case-in-chief, Nkongho moved for a Judgment of Acquittal as to Count II pursuant to Federal Rule of Criminal Procedure 29(a). Specifically, she alleged that venue for Count II was improper in the District of Maryland because her conduct happened solely in California. Relying on Levy's testimony that the transaction was completed once the deposit was made, Nkongho alleged that the crime did not occur in Maryland. This Court reserved decision on the motion pursuant to Federal Rule of Criminal Procedure 29(b). Nkongho was then found guilty of both conspiracy and money laundering.

## II.   STANDARD OF REVIEW

"The Constitution provides that '[t]rial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed.'" *United States v. Collins*, 372 F.3d 629, 632 (4th Cir. 2004) (quoting U.S. Const. art. III, § 2, cl. 3). "When multiple counts are alleged in an indictment, venue must be proper on each count. Venue on a count is proper only in a district in

---

[2] As relevant here, out-of-state counter deposits are conducted when someone deposits money at a bank location in one state, but the money is intended for an account located in another state. *See* ECF No. 19 at 5.

which an essential conduct element of the offense took place. The burden is on the Government to prove venue by a preponderance of the evidence." *United States v. Villarini*, 238 F.3d 530, 533–34 (4th Cir. 2001). "Because proper venue is a constitutional right, waivers of venue rights through failure to object should not readily be inferred." *United States v. Stewart*, 256 F.3d 231, 238 (4th Cir. 2001). "[I]f an indictment properly alleges venue, but the proof at trial fails to support the venue allegation, an objection to venue can be raised at the close of the evidence. . . . When, however, the asserted venue defect is apparent on the face of the indictment, a defendant does waive any objection if he fails to object prior to trial." *Collins*, 372 F.3d 629 at 633.

## III. DISCUSSION

### A. Timing

As noted above, Nkongho raised the issue of venue for the first time at the close of the Government's case-in-chief. Thus, before turning to the merits of Nkongho's argument, this Court must determine whether the motion was timely. *See Collins*, 372 F.3d at 633 ("Defendants, however, did not raise any objection to venue until the close of evidence in this case. As a result, a question arises as to whether they have waived their objections to venue.").

Pursuant to Federal Rule of Criminal Procedure 12(b), a motion for improper venue "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(A)(i). However, "if an indictment properly alleges venue, but the proof at trial fails to support the venue allegation, an objection to venue can be raised at the close of the evidence." *Collins*, 372 F.3d at 633. "Indeed, a defendant does not waive venue unless the indictment clearly reveals [the venue] defect but the defendant fails to object. When, however, the asserted venue defect is apparent on the face of the indictment a defendant does waive any objection if he fails to object

prior to trial." *Id.* (internal quotations and citations omitted); *see also United States v. Melia*, 741 F.2d 70, 71 (4th Cir. 1984) ("The rule that the objection must be made before trial applies only when the defect is apparent on the face of the indictment. Otherwise, the objection can be made at the close of all the evidence.") (internal citations omitted).

Nkongho argues that the venue defect was not apparent on the face of the indictment and thus, she could not have raised this motion until after the close of evidence. In the indictment, the Government alleged that Nkongho "deposited and caused to be deposited $3,000 in cash at a Bank of America branch in California into a Bank of America account . . . held by Barbour in Maryland." ECF No. 1 at 10. Nkongho argues that it was not apparent that the Government's evidence would only show a deposit conducted in California. Further, Nkongho argues that it was not apparent that the Government's witness would testify that, to his knowledge, a deposit is considered concluded at the time and place of the deposit.

As to timeliness, Nkongho is correct. Specifically, the indictment alleges that Nkongho "caused to be deposited $3,000" into an account in Maryland. From the indictment, one could presume that the Government would show that Nkongho took an action either in or tied to Maryland. At trial, however, a Government witness testified that the bank considered the transaction completed in California. ECF No. 19 at 6. Because "a defendant does not waive venue unless the indictment clearly reveals [the venue] defect[,]" *Collins*, 372 F.3d at 633 (internal quotations and citations omitted), Nkongho did not waive her venue argument.

### B. Proper Venue

Turning to the merits of Defendant's venue challenge, Nkongho was charged with money laundering under 18 U.S.C. § 1956(a). The statute's venue provision provides that:

> a prosecution for an offense under this section or section 1957 may be brought in—

> (A) any district in which the financial or monetary transaction is conducted; or
> (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

18 U.S.C. § 1956(i)(1). The venue provision goes on to note that:

> For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction. Any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place.

18 U.S.C. § 1956(i)(3).

Before this venue provision was enacted, the Supreme Court explained that "Congress has provided by statute for offenses 'begun in one district and completed in another'; such offenses may be 'prosecuted in any district in which [the] offense was begun, continued, or completed.'" *United States v. Cabrales*, 524 U.S. 1, 7 (1998) (quoting 18 U.S.C. § 3237(a)). "Money laundering . . . arguably might rank as a 'continuing offense,' triable in more than one place, if the launderer acquired the funds in one district and transported them into another." *Id.* at 8. Congress later enacted the venue provision in 18 U.S.C. § 1956(i) as an alternative to the venue provision in 18 U.S.C. § 3237(a). *See Whitfield v. United States*, 543 U.S. 209, 217 (2005); *United States v. Osuji*, 413 F. App'x 603, 611 (4th Cir. 2011).[3]

Nkongho argues that because her conduct only took place in California, venue in the District of Maryland is improper. Specifically, Nkongho contends that the beginning and end of

---

[3] A district court recently explained the enactment of the venue provision and its impact on money laundering cases. "[W]hile *United States v. Cabrales*, 524 U.S. 1 (1998), interprets the general venue provisions of 18 U.S.C. § 3237(a), that provision applies '[e]xcept as otherwise expressly provided by enactment of Congress.' Congress, in response to *Cabrales*, so expressly provided by amending the money laundering statutes to include broader venue provisions in Section 1956(i)[.]" *United States v. Carryl*, 2019 WL 1139501, at *2 (W.D.N.C. Mar. 12, 2019).

her conduct was making a deposit in California, so she neither "conducted" a financial transaction in Maryland, *see* Section 1956(i)(1)(A), nor "participated in the transfer of the proceeds" to Maryland, *see* Section 1956(i)(1)(B). In support of this argument, Nkongho references the testimony of Levy, who answered affirmatively when asked, "[T]his transaction was completed once the 3,000 was deposited to Bank of America in California?" ECF No. 19 at 8.

Nkongho's argument is refuted by the text of the venue provision. Despite Levy's testimony, the statute and its definitions control whether venue is proper here. Notably, Section 1956(i)(3) clarifies that a "transfer of funds" from one place to another is a "single, continuing transaction" for the purposes of the venue provision. 18 U.S.C. § 1956(i)(3). Further, "any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place." *Id.* This section explains that the transfer can be made by "wire or any other means[.]" *Id.* "Conducts" is defined as "initiating, concluding, or participating in initiating, or concluding a transaction[.]" 18 U.S.C. § 1956(c)(2). A "financial transaction" is defined as "a transaction which in any way or degree affects interstate or foreign commerce" which involves "movement of funds by wire or other means" or a "transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce[.]" 18 U.S.C. § 1956(c)(4)(A)-(B).[4]

Nkongho conducted a portion of a financial transaction that concluded in Maryland. She "initiat[ed]" a financial transaction by depositing money into Barbour's bank account. This

---

[4] The statute does not define "transfer," but it is clear from the definition of "financial transaction" that a transfer can simply be the "movement of funds." Thus, actually wiring the money is not necessary. *See United States v. Dinero Exp., Inc.*, 313 F.3d 803, 806 (2d Cir. 2002) ("Because money is inherently fungible, a person is sensibly considered to have engaged in a 'transfer' of money whenever he accepts money in one location and, pursuant to an overall course of conduct, causes the delivery of related money to another location.").

financial transaction was a "movement" of cash from California to a bank account in Maryland. The transaction then concluded when the money became available to Barbour in Maryland. Pursuant to Section 1956(i)(3), Nkongho's conduct was part of a "single, continuing transaction" that ended in Maryland. Under the venue provision, Nkongho could "be charged in any district in which the transaction takes place." 18 U.S.C. § 1956(i)(3).

Venue was therefore proper in the District of Maryland under the statute. Other courts have found proper venue with similar facts. *See United States v. Carryl*, 2019 WL 1139501, at *2 (W.D.N.C. Mar. 12, 2019) (venue was proper in North Carolina when the defendant "caused [the victim] to send [the defendant] via wire transfer $350,000 from [North Carolina] to [New York]" because Section 1956(i) allows "charges in any district where the underlying specified unlawful activity could be prosecuted if, as is the case as alleged here, the defendant participated in any way in transferring the funds out of that district."); *United States v. Sanchez*, 2018 WL 4760844, at *3 (W.D.N.C. Oct. 2, 2018) (venue was proper because "defendant and her alleged co-conspirators provided victims specific instructions to initiate the Western Union wire transfers that were routed and processed in this district and that resulted in the conclusion of the wire transfers in Costa Rica through receipt by runners who defendant identified for the victims"); *United States v. Louissaint*, 2016 WL 3145145, at *12 (W.D.N.Y. June 3, 2016) ("In this case, the government has charged Louissaint with money laundering offenses based upon the wire transfer of funds from New York City to Rochester, which is located in the Western District of New York. Venue is thus appropriate in the Western District of New York because it is a district in which a portion of the financial transaction occurred.").

IV.     **CONCLUSION**

For the reasons discussed, the Motion for Judgment of Acquittal is denied. A separate Order follows.

Dated: November 5, 2021 　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge